CALEB LOMBARD *vs.* BENJAMIN OLIVER & others.

In an action against the selectmen of a town for refusing to put the plaintiff's name upon the list of voters and rejecting his vote, the plaintiff may prove his own statements relating to his residence, made to the selectmen before offering his vote, not under oath, for the purpose of furnishing to them evidence of his having the legal qualifications of a voter; and he may testify to his own intention in leaving the town for a prolonged absence, previously to the time of the acts complained of.

TORT against the selectmen of Wellfleet, for refusing to put the plaintiff's name upon the list of voters, and rejecting his vote at several elections in that town.

At the second trial in the superior court, before *Russell*, J., after the decision reported in 3 Allen, 1, the plaintiff, for the purpose of showing that before offering his vote he furnished to the defendants sufficient evidence of his having the legal qualifications of a voter, was allowed to prove certain statements relating to his residence, made by him before the board of selectmen, not under oath. To these the defendants objected, on the ground that statements not under oath were not competent testimony before them. It was not proved or claimed that they made any such objection at the time, or that they tendered an oath to the plaintiff.

It appeared that the plaintiff in 1857 went from Wellfleet to Roxbury, and that he passed the most of the time in the latter place down to the time of the acts complained of in 1859. The plaintiff was a witness, and his counsel asked him what his intention was in leaving Wellfleet; to this question the defendants objected, but the judge overruled the objection, and the plaintiff replied that he did not intend to remove from Wellfleet.

The jury returned a verdict for the plaintiff, with $800 damages, and the defendants alleged exceptions.

*H. A. Scudder*, for the defendants.

*G. Marston*, for the plaintiff.

BIGELOW, C. J. We cannot doubt that the testimony of the

plaintiff concerning the statement made by him of his qualifica-
tions as a voter to the defendants, at the time he sought to have
his name put upon the list of voters, was competent evidence,
and should have been admitted. He was bound to show, in
order to maintain this action, that he had offered sufficient evi-
dence to the defendants to authorize and require them to put
his name on the list. *Blanchard* v. *Stearns*, 5 Met. 302. His
own statement of facts bearing on the question of his residence
in the town was a part of this evidence, which they could not
properly overlook or disregard, in determining on his right to vote,
unless there was good reason for disbelieving or rejecting it. The
proceedings before selectmen of towns, and mayors and aldermen
of cities, under Rev. Sts. *c.* 3, §§ 6, 7, (Gen. Sts. *c.* 6, §§ 6, 7,)
are not intended to have the formality and regularity of judicial
proceedings. They are in their nature summary. Nor is it the
design of the statute that the investigation should be conducted
under a strict application of the rules of evidence at common
law. This would be quite impracticable, and would defeat the
great object of the statute, which was to enable voters, by an
application to the selectmen during a brief interval before the
holding of an election, to cause their names to be put upon the
list. Certainly it would work very great injustice, if the evi-
dence of a voter's qualifications was offered and received by the
selectmen without objection by them as to its form or nature, or
without any requisition that it should be under the sanction of
an oath ; and at the same time that his claim should be rejected
for a mere informality of proof, without any knowledge by him
of the ground on which his right to vote was denied. Good
faith and fair dealing would require that the voter should be
informed of any defect in the form or mode of proof, if the
selectmen intended to reject his claims on that ground, so that
he might cure the irregularity or supply the deficiency. In the
case before us it does not appear that any objection was made
to the statements of the plaintiff at the time he made them to
the selectmen. He was not informed that they were incom-
petent, or that they would not be received and regarded unless
made under oath. For aught that appears, he was left to

suppose that the facts stated by him were supported by competent evidence. Under such circumstances, we are of opinion that the defendants were estopped from setting up, in subsequent proceedings against them, the objection that his statements must now be rejected as part of the evidence laid before them, because he was not a competent witness, or for the reason that he did not testify under the sanction of an oath.

We also think that, upon another and distinct ground, evidence of the statements made by the voter to the selectmen was competent on the trial of the issue in this action. It is provided by Rev. Sts. *c.* 3, § 8, (Gen. Sts. *c.* 6, § 10,) that whoever gives a false name or a false answer to selectmen, when in session for the purpose of receiving evidence of the qualifications of persons claiming a right to vote, shall forfeit the sum of thirty dollars for each offence. This enactment affords a clear and direct implication that the statements of persons concerning their own qualifications as voters are not only competent evidence to be received by selectmen, but that it is not necessary that they should be made under oath.

The plaintiff was a competent witness on the trial of this action, under Gen. Sts. *c.* 131, § 14. The question of his intention in leaving the town for a prolonged absence was material in its bearing on the issue before the jury, and his own testimony that he did not thereby intend to change his domicil was clearly admissible. *Fisk* v. *Chester*, 8 Gray, 506. *Thacher* v *Phinney, ante,* 146. *Exceptions overruled.*